IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

HOWARD LEE GORRELL,          *

    Plaintiff                *

    v.                       *      CIVIL NO.: WDQ-11-2975

MARTIN O'MALLEY,             *
    Governor of the State of
    Maryland
                             *
    Defendant.
                             *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Howard Lee Gorrell sued Martin O'Malley, Governor of Maryland ("the Governor"), challenging the constitutionality of the October 2011 Maryland redistricting plan. For the following reasons, the Governor's motion to dismiss will be granted. The Governor's motion to expedite litigation schedule, and Gorrell's motions to convene a three-judge panel and appoint counsel, will be denied. Gorrell's motions for entry of default and default judgment will be dismissed.

I. Background[1]

After each United States decennial Census, the Governor of Maryland is required to propose a new congressional district map of Maryland, taking into account population changes and changes

---

[1] For the motion to dismiss, the well-pled allegations in Gorrell's amended complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

in the number of Maryland's members of the United States House of Representatives. ECF No. 6 ¶7.

In 1991 and 2001, past Governors of Maryland developed, with help from Governor's Redistricting Advisory Committees, ("GRACs"), redistricting plans to reflect population changes in the 1990 and 2000 Censuses. ECF No. 6 ¶21. Those GRACs developed "Legal Standards for Plan Development." Id.

After the 2010 United States Census, the Governor began to develop a redistricting plan for Maryland's eight seats in the House of Representatives. ECF No. 6 ¶¶6, 10. On July 4, 2011, the Governor established a five-member GRAC. Id. ¶11. From July 23, 2011, to September 12, 2011, the GRAC held 12 public hearings, receiving public comment as it drafted a redistricting plan for the Governor to present to the Maryland legislature. Id. ¶¶12, 26.

Gorrell, who is deaf, attended and testified at the hearings. Id. ¶15. The GRAC invited citizens to propose redistricting plans by September 19, 2011, a deadline established in its "Guidelines for Third Party Plan Proposals" ("Guidelines"). Id. ¶16. The Guidelines stated that the GRAC could not review proposals submitted after the deadline. Id. ¶68. On September 19, 2011, Gorrell submitted a proposal, which the GRAC posted on the Maryland Department of Planning website for public consideration. Id. ¶17.

On October 6, 2011, the GRAC released preliminary recommendations for congressional district boundaries. Id. ¶19. On October 9, 2011, a Maryland senator showed a group of citizens, including Gorrell, a map of the GRAC-recommended boundaries with the population of each proposed district. Id. ¶20.

On October 15, 2011, the Governor released his substantially similar proposed redistricting map. Id. ¶25. On October 17, 2011, he submitted it to the President of the Maryland Senate and Speaker of the Maryland House of Delegates who introduced it at a joint hearing of the Maryland General Assembly. Id. ¶26. That day, Gorrell testified at the joint hearing, advocating his redistricting plan because--unlike the Governor's plan-- it stated the population deviation of each proposed district. Id. ¶¶27-28. On October 19, 2011, the Senate and House adopted the Governor's redistricting plan ("the plan"). Id. ¶29.

Under the plan no district would have more than 600 farmers.[2] Id. ¶39. Frederick, Carroll, and Montgomery Counties--each with a large number of farmers--were divided among

---

[2] As estimated by the number of FFA chapters and members. ECF No. 6 ¶¶38, 51. Under the 2002 Congressional districts, the sixth district had 1,670 farmers. No other district had more than 300 farmers. ECF No. 6 ¶39.

districts; this increased the ratio of urban voters to farmer voters in each district. *Id.* ¶¶51-53.

On October 27, 2011, Gorrell sued the Governor, alleging that the plan unconstitutionally separates farmers (a community of interest), gerrymanders, and employs an overly strict equal population rule, and the procedure for adopting the plan violated the Maryland Constitution and state guidelines. *Id.* ¶¶33-79. On November 10, 2011, Gorrell filed an amended complaint[3] and moved for the appointment of counsel. ECF Nos. 6, 7. On December 15, 2011, the Court denied Gorrell's motion to appoint counsel. ECF No. 10.

On December 22, 2011, the Governor moved to dismiss and expedite litigation of the suit to resolve challenges to the redistricting plan before the January 20, 2012 deadline for printing absentee ballots. ECF Nos. 13, 14. On the same day, Gorrell moved to convene a three-judge panel under 28 U.S.C. § 2284(a). ECF No. 17. On December 28, 2011, Gorrell filed a response in support of Governor O'Malley's motion to expedite litigation.[4] ECF No. 23. On January 4, 2012, Gorrell again

---

[3] The Court denied his subsequent motion to file the first amended complaint because its filing had not required leave of the Court under Fed. R. Civ. P. 15(a). ECF No. 10 at 2.

[4] On December 15, 2011, Gorrell moved for an entry of default and for default judgment. ECF Nos. 11, 12. In his response to the motion to expedite, Gorrell noted that he "authorize[es] denying [his] Motion for Entry of Judgment by Default." ECF No. 23 at

sought the appointment of counsel. ECF No. 25. On January 18, 2012, Gorrell responded to the motion to dismiss. ECF No. 30.

II. Analysis

    A.  Gorrell's Motion to Convene A Three-Judge Panel

Under 28 U.S.C. § 2284(a), "[a] district court of three judges shall be convened when . . . an action is filed challenging the constitutionality of the apportionment . . . of any statewide legislative body." However, a single district judge may dismiss such an action if he determines that the claims are "insubstantial in that they are obviously without merit or clearly determined by previous case law." *Duckworth v. State Bd. of Elections*, 213 F. Supp. 2d 543, 546 (D. Md. 2002) [hereinafter "*Duckworth* I"]. A constitutional claim is insubstantial if its allegations fail to state a claim for which relief may be granted. *Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769, 773-75 (4th Cir. 2003) [hereinafter "*Duckworth* II"] (aff'g *Duckworth* I). Accordingly, this Court will determine whether Gorrell has asserted a substantial constitutional claim before convening a three-judge panel.

As discussed below, the complaint fails to state a claim for which relief can be granted. Thus, Gorrell has not alleged a substantial claim and a three-judge panel is not necessary.

---

3. The Court will construe that statement as a request to dismiss his motions for entry of default and default judgment, and will dismiss the motions without prejudice.

See *Duckworth* I, 213 F. Supp. 2d at 546. Gorrell's motion will be denied.

   B.   The Governor's Motion to Dismiss

The Governor moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). ECF No. 13 Attach. 1 at 1.

   1.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Midgal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's

6

liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)(*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

    2. Failure to Preserve Communities of Interest

Gorrell alleges that under the redistricting plan, "many Maryland agriculture-related electorates will suffer dilution of their votes" because it unconstitutionally dilutes farm votes, a community of interest. ECF No. 6 ¶¶33-42. The Governor contends that "the Supreme Court has recognized communities of interest as a legitimate consideration in redistricting, . . . [but] has [not] *required* such consideration." ECF No. 13 Attach. 2 at 3 (*citing Miller v. Johnson*, 515 U.S. 900, 920 (1995)).

A state "is free to recognize communities . . . [with] some common thread of relevant interests." *Miller*, 515 U.S. at 920. Gorrell relies on a 2001 GRAC regulation that states that "[t]o the extent permitted by federal case law, the [redistricting

plan] should . . . give consideration to[] preserving identifiable communities of interest." ECF No. 6 ¶35.

As the Court of Appeals of Maryland has recognized, preserving communities of interest is not constitutionally required, and "non-constitutional criteria cannot override the constitutional ones." *In re Legislative Districting of State*, 370 Md. 312, 322, 805 A.2d 292, 297 (2002). Although the preservation of communities of interest is a legitimate redistricting goal and is often used to justify the creation of a district that otherwise appears improper,[5] "that this is a legitimate *goal* does not mean that there is an individual constitutional *right* to have one's particular community of interest contained within one congressional district." *Graham v. Thornburgh*, 207 F. Supp. 2d 1280, 1296 (D. Kan. 2002).

As with contiguity, compactness,[6] and respect for political subdivisions,[7] preservation of communities of interest is one of the

---

[5] *See, e.g., Jefferson Cnty. Comm'n v. Tennant*, No. 11-0989, 2012 WL 10500, *5 (S.D.W. Va. Jan. 3, 2012); *Diaz v. Silva*, 978 F. Supp. 96, 123-26 (E.D.N.Y. 1997); *Johnson v. Miller*, 929 F. Supp. 1529, 1557 (S.D. Ga. 1996).

[6] A district that covers one geographic area, includes communities adjacent to each other, and is small enough that the farthest reaches are not "distant" is contiguous and compact. *See League of United Latin American Citizens v. Perry*, 548 U.S. 399, 430 (2006). Compactness can also refer to the concentration of a minority population in a district. *Id.* at 433.

>principals of apportionment . . . [that are] important not because they are constitutionally required--they are not--but because they are objective factors that may serve to defeat a claim [of unconstitutional redistricting]

See Duckworth II, 332 F.3d at 778.

The plan's division of "obvious communities of interest," including farmers, raises questions about the wisdom of the plan, however, although preserving communities of interest is a "legitimate redistricting interest[]," it is not a requirement. Fletcher v. Lamone, No. 11-3220, 2011 WL 6740169, *13 (D. Md. Dec. 23, 2011). That an alternative plan "is more effective . . . in vindicating some legitimate redistricting interests . . . does not render the state plan illegitimate." Id.

Because it alleges no constitutional violation, Gorrell's communities of interest claim will be dismissed with prejudice.

### 3. Gerrymandering

Gorrell alleges that the redistricting plan employs "partisan gerrymandering that substantially disadvantages voters of one party." ECF No. 6 ¶44. In support, he argues that the new plan favors the Governor's political party and disadvantages an incumbent in the former Sixth District who has historically advocated for farm interests. Id. ¶¶47, 49, 54. Such a claim

---

[7] A district respects political subdivisions when it leaves those subdivisions, such as counties, intact. Miller v. Johnson, 515 U.S. 900, 942 (1995) (Ginsburg, J., dissenting).

> is eas[y] to accept factually -- Maryland's Republican Party regularly receives 40% of the statewide vote but might well retain only 12.5% of the congressional seats [under the plan] -- it is also the . . . weakest claim legally, if [Gorrell has] standing to assert it at all.

*Fletcher*, 2011 WL 6740169, *14. Political gerrymandering claims are nonjusticiable. *Vieth v. Jubelirer*, 541 U.S. 267, 281 (2004) (plurality opinion); *id.* at 307-09 (Kennedy, J., concurring).

Even a justiciable claim that contains only "a proffer that political gerrymandering has occurred, combined with conclusory allegations that that gerrymandering is unconstitutional," may properly be dismissed. *Duckworth II*, 332 F.3d at 778.

### 4. Equal Population Rules

Gorrell alleges that "rigid equal population rules could make it harder to draw districts that give citizens real opportunity to elect representatives of their choice." ECF No. 6 ¶77. He argues that the Governor should not have prioritized equal population over preserving the 1,849 state precincts in drawing the district lines. *See id.* ¶73.

The Governor contends that the state was required to "make a good faith effort to achieve precise mathematical equality" in the district populations, and preserving political subdivisions such as precincts would not have justified creating population variances. ECF No. 25 Attach. 2 at 6.

Although Gorrell cites *Baker v. Carr*, he seems to stand it on its head with his argument for preserving precincts even if it creates mathematical inequality. See ECF No. 6 ¶¶ 9, 79. Under Article I, §2[8] of the United States Constitution, "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State." This *requires* the states to divide the population "as nearly as practicable" among its congressional districts by making "a good-faith effort to achieve precise mathematical equality." *Kirkpatrick v. Preisler*, 394 U.S. 526, 530-31 (1969).

Valid legislative policies, consistently applied, that are "consistent with constitutional norms" can justify some variance in district populations. *Karcher v. Doggett*, 462 U.S. 725, 740 (1983). However, such variances are not required and not necessarily justified. *Kirkpatrick*, 394 U.S. at 533. Indeed, "considerations of practical politics," such as preserving groups with similar political interests, do not "justify population disparities." *Id.* at 534. The Governor was not required to avoid dividing precincts, and might have created an unconstitutional redistricting plan by doing so. See *id.* at 533. Accordingly, Gorrell's equal population claim will be dismissed with prejudice.

---

[8] As modified by U.S. Const. Amend. XIV § 2.

5.  Maryland Constitutional Claim

Gorrell alleges that Article III, § 5 of the Maryland Constitution required the Governor to conduct a public hearing after the GRAC released its preliminary redistricting proposal. ECF No. 6 ¶¶57, 61.

As the Governor notes, Article III, § 5 governs the procedure for creating "*legislative* districts for electing . . . the members of the Senate and House of Delegates." Md. Const. Art. III § 5 (emphasis added); ECF No. 13 Attach. 1 at 5.

Gorrell "debates with himself . . . whether Md. Const. Art. III, § 5 could apply to the congressional redistricting." ECF No. 6 ¶65. He identifies several applications of the article to state legislative redistricting, *Id.* ¶¶57-60, but he has cited--and the Court has found--no authority for applying it to congressional redistricting.  Accordingly, the claim will be dismissed with prejudice.

6.  Alleged Violations of GRAC Regulations

Finally, Gorrell alleges that the plan that the Governor submitted to the Senate and House of Delegates did not meet the GRAC deadline for third party plan proposals. ECF No. 6 ¶68. He admits that no law establishes a deadline for drawing or proposing congressional districts, but alleges that the Governor and his peers should be required to adhere to the regulation. *Id.* ¶¶8, 67-68. Gorrell does not contend that violating the

rules affected his constitutional rights, or identify a federal cause of action for the violation of the rules.[9]  *See id.* ¶¶66-70.  As he has not alleged a cause of action, the claim will be dismissed with prejudice.

   C.   Gorrell's Motion to Appoint Counsel

   Gorrell, who is deaf, requests appointment of counsel to help him "communicate orally with either the court or witnesses . . . for any motion hearing or trial."  ECF No. 25 at 4.  No hearing or trial is necessary, and Gorrell would have been assisted by a translator had a hearing been necessary.  Accordingly, Gorrell has not demonstrated that his is an "exceptional" case in which appointment of counsel is appropriate.  *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975)[10];

---

[9] Further, Gorrell alleges that the Guidelines stated that the *GRAC* would not review late submissions.  ECF No. 6 ¶68.  He does not allege that the Guidelines prohibited the Governor from reviewing late submissions.  *Id.*

[10] The Court should consider "the type and complexity of the case, and the abilities of the individual[] bringing it," and should appoint counsel only when the plaintiff "has a colorable claim."  *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) *abrogated on other grounds by Mallart v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989).  Gorrell has done an admirable job of stating what he views as the factual, legal and equitable flaws in the Governor's plan.  As discussed above, Gorrell does not have a claim.  Accordingly, appointment of counsel is not necessary.

*see also Gorrell v. Comm'r of Social Sec.*, No. 11-2095, 2011 WL 5110229 *3 (3rd Cir. Oct. 28, 2011).[11]

D.   The Governor's Motion to Expedite

As Gorrell's complaint will be dismissed and the case will be closed, the Governor's motion to expedite will be denied as moot.

III. Conclusion

For the reasons stated above, the Governor's motion to dismiss will be granted, and his motion to expedite litigation schedule will be denied. Gorrell's motions for entry of default and default judgment will be dismissed. His complaint fails to state a claim for which relief can be granted, and thus he has not alleged a substantial claim and a three-judge panel is not necessary. Accordingly, his motions to convene a three-judge panel and appoint counsel will be denied.

_1/19/12_____                          _____
Date                                            William D. Quarles, Jr.
                                                United States District Judge

---

[11] Affirming denial of appointment of counsel to Howard Lee Gorrell because he "ably, albeit unsuccessfully, briefed and presented his cause pro se." In addition, there was "no showing that his deafness in any way prejudiced his ability to represent his interests before the District Court." *Gorrell*, 2011 WL 5110229, *3.